**Robert McKERRON, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. 1078.**

United States District Court
D. Montana,
Butte Division.

Nov. 7, 1966.

See also D.C., 236 F.Supp. 382.

David L. Holland, Butte, Mont., for plaintiff.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendant.

MURRAY, Senior District Judge.

This action was originally brought under the provisions of 42 U.S.C. § 405(g) to review a decision of the Secretary of Health, Education and Welfare dated June 26, 1963, denying plaintiff a period of disability and disability insurance benefits under the Social Security Act, particularly §§ 416(i) and 423(a) of 42 U.S.C.

After reviewing the Secretary's decision of June 26, 1963, the court felt that while that decision was supported by the record as it then stood, the record did indicate that there might be additional evidence available to the plaintiff which, if presented, might lead to a different decision. Accordingly, under the provisions of 42 U.S.C. § 405, the court remanded the case to the Secretary for a rehearing. Rehearing was held before a Hearing Examiner, who, on May 7, 1965, rendered a recommended decision denying plaintiff's application for a period of disability and disability insurance benefits. On June 28, 1965, the Appeals Council of the Department of Health, Education and Welfare adopted, with a few minor changes, the Hearing Examiner's recommended decision as its decision, and this is the decision that is now before the court for review.

In the application which resulted in this appeal, the plaintiff listed his impairments as "fractured neck, dislocated shoulder, emphysema and bad legs due to varicose veins". At the original hearing it also developed that plaintiff suffers a vision impairment with one eye almost totally blind and the vision in the other eye somewhat impaired but correctible with lens. The plaintiff also complained of considerable pain in the neck, shoulders, spine and legs.

The application involved here was filed June 29, 1962. In the application plaintiff asserted he became disabled in October, 1957. However, this claim is contradicted by the fact that, according to the record, plaintiff engaged in substantial gainful activities subsequent to that date. This is not too material, however, because under the Act, if the plaintiff can establish disability at any time within three months after the date of filing his application, he would be entitled to the benefits applied for provided he met the

special earnings requirements, or "quarters of coverage" requirements of the Act. The record shows he met these requirements and continued to meet them until March 31, 1964.

Section 405(g) of Title 42, U.S. C.A. provides in part that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Under this provision of the Act it is the Secretary's sole responsibility to weigh the evidence and determine whether a claimant has established his disability within the meaning of the Act, and the court's only function is to review the record to determine whether there is any substantial evidence in that record to support the Secretary's decision. If there is such substantial evidence the court has no alternative but to affirm the decision, even though the court, if it were to weigh the evidence, would come to a different decision. With this consideration in mind the court has reviewed the entire record in this case and come to the conclusion that substantial evidence appears therein to support the Secretary's decision, and that that decision must be affirmed.

It is clear from the record that plaintiff suffers a multitude of afflictions including moderate arthritis of the cervical and lumbar spines, bursitis in each shoulder, varicose veins in both legs, emphysema, almost total loss of vision in the left eye and impaired vision in the right eye.

Without reciting all of the evidence in detail, there is the following evidence concerning these various afflictions which the Hearing Examiner chose to accept and which support his decision:

With reference to the arthritis and bursitis, Dr. Johnson, a neurosurgeon, and Dr. Davidson, an orthopedic surgeon, reported little, if any, loss of motion in the upper extremities, and termed the arthritis moderate. Dr. Johnson reported no clear cut evidence of any neurological disorder. As to the pain resulting from these conditions, Dr. Gold, a specialist in internal medicine, reported that while these conditions caused pain at times, it was not such pain as to be disabling. He based this conclusion on the relatively small amount and mild nature of the pain relief medication which the plaintiff reported taking, and also on the absence of any marked deformities in the joints or muscle atrophy which he stated would result from severe pain extended over any period of time.

With reference to the varicose veins in the lower extremities, all of the medical evidence, including that from the plaintiff's physicians, was to the effect that this condition could be relieved and remedied by surgery, injections or the wearing of rubber stockings. The Hearing Examiner also noted that this condition did not appear to be any worse at the time of the hearing than it had been in prior years when the plaintiff had been engaging in heavy mining and hod carrying work.

With reference to the condition of emphysema, the evidence is that pulmonary function studies performed on plaintiff were within normal limits, which would indicate no disability attributable to the pulmonary system.

As for the eye condition, Dr. Burton, an ophthalmologist who examined the plaintiff, reported 20/100 vision in plaintiff's right eye, uncorrected, and the ability only to count fingers in the left eye at three feet. However, he reported 20/20 vision in the right eye with proper glasses and rated plaintiff's visual efficiency with the use of both eyes at 75%. He attributed the loss of vision in the left eye to dis-use of the eye from birth. The evidence is that the lack of vision in the left eye had existed over many years and had never prevented plaintiff from obtaining and performing work. At the time of the hearing the plaintiff still held an automobile driver's license, with the only restriction thereon due to his vision being the requirement that he have a left hand outside mirror.

Finally, there was the evidence of Dr. Wilson, a vocational consultant, who reviewed the entire prior record and who attended the last hearing and was familiar with all of the medical evidence and

the plaintiff's educational and vocational background. Dr. Wilson testified that there were many jobs available not only in the national economy, but in the local economy which were well within the plaintiff's physical and vocational capabilities.

The foregoing is simply a brief recital of some of the evidence which supports the decision of the Hearing Examiner. Some of this evidence was rather weak and there was contradictory evidence which it would serve no useful purpose to detail. The foregoing résumé is intended only to demonstrate that there is substantial evidence supporting the decision and that is the only question before the court in this proceeding. If the court were permitted to weigh the evidence anew, it quite possibly would arrive at a different conclusion on the question of plaintiff's disability, but that is not within the court's province.

Therefore, it is ordered and this does order that the decision of the Secretary of Health, Education and Welfare denying the plaintiff a period of disability and disability insurance benefits be and the same hereby is affirmed.